UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

## 03 12252 REK

|  |  |  |
|---|---|---|
| BABY BUNK, INC., | ) | |
| Plaintiff | ) | |
| | ) | MAGISTRATE JUDGE ˣ ˣ ˣ ˣ |
| v. | ) | C.A. No. |
| | ) | |
| ARMS REACH CONCEPTS, INC. | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |

AMOUNT $____
SUMMONS ISSUED____
LOCAL RULE 4.1____
WAIVER FORM____
MCF ISSUED____
BY DPTY. CLK.____
____ 11/14/03

### COMPLAINT AND JURY DEMAND

### PARTIES

1.    The plaintiff, Baby Bunk, Inc. ("Baby Bunk"), is a Massachusetts

corporation with a place of business at 246 LaGrange Street, Boston, Massachusetts.

2.    The defendant, Arms Reach Concepts, Inc. ("ARC"), is a California

corporation with a place of business at 27162 Sea Vista Drive, Malibu, California.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331.

4.    Venue in this Court is proper pursuant to 28 U.S.C. §§1391(b) and (c).

### FACTS

### SIDS and Co-Sleeping

5.    Sudden Infant Death Syndrome (SIDS) is the sudden death of an infant

that remains unexplained after a thorough case investigation. Accordingly to the National

Center for Health Statistics, SIDS is the leading cause of death in the United States

among infants between 1 month and 1 year of age and the third leading cause of death overall among infants less than 1 year of age. Studies suggest that the risk of SIDS can be reduced in a number of ways, including, e.g., placing the baby on his or her back to sleep on a firm surface, making sure the baby has a smoke-free environment, and by keeping the baby from being overheated.

6.    Over the last 24 years, the medical community has also studied the role that infant sleeping arrangements may play in reducing the risk of SIDS. More particularly, these studies compare bed-sharing and solitary sleeping mother-infant pairs and their relative SIDS rates.

7.    The practice of bed-sharing, or sleeping arrangements wherein infants sleep in proximity to their mothers, is commonly referred to in the medical literature as "co-sleeping." The term co-sleeping has been used as a term for the practice of bed sharing at least since 1989.

8.    Although there is some controversy concerning the conclusions drawn by researchers, it is commonly argued that co-sleeping is biologically, psychologically, and socially the most appropriate context for the development of healthy infant sleep. Research has found that newborns rely on proximity of their mothers to help regulate body heat, breathing and cardiac rhythms. This research also suggests that co-sleeping may reduce the chance of SIDS.

### Baby Bunk's Co-Sleeping Solution

9.    Although thought to reduce the risk of SIDS, co-sleeping carries some risk that the parent will smother the infant during sleep.

2

10.     Accordingly, Baby Bunk developed a bassinette alternative that facilitates co-sleeping while simultaneously eliminating the risk that the infant will be smothered or suffocated by the parent during sleep. Baby Bunk's co-sleeper product is marketed under the trademark BABY BUNK.

11.     In order to disseminate information concerning the BABY BUNK and its utility in facilitating co-sleeping and the prevention of SIDS, Baby Bunk established a commercial website. This website provides information about the BABY BUNK product and provides links to numerous articles concerning the benefits of co-sleeping. Baby Bunk programmed its website to be retrieved by the various Internet search engines (e.g., Google.com and Yahoo.com) whenever Internet users query those sites for information concerning, inter alia, SIDS, CO-SLEEPING and CO-SLEEPERS. In order to accomplish this result with the search engines, Baby Bunk used the descriptive term CO-SLEEPER in the so-called "meta-tags" (i.e., information or code of a website not visible to the user which is used by search engines to help them better categorize the website) of its web page.

12.     Baby Bunk also established contracts with various distributors of baby furniture and related products whereby the distributor would prominently display the BABY BUNK product under the product category "Co-Sleepers" and/or provide links to the Baby Bunk website.

13.     As a result of its co-sleeper innovation and ability to disseminate information concerning same to the public, Baby Bunk has enjoyed commercial success in selling its BABY BUNK product.

### ARC's Use of the Descriptive CO-SLEEPER Name in
### Connection With Co-Sleeping Device and Anti-Competitive Conduct

14.    On May 9, 1997, ARC filed with the United States Patent and Trademark Office an application to register the trademark CO-SLEEPER for use in connection with furniture, jewelry boxes not of precious metals, picture frames, sleeping bags, mirrors.

15.    On February 23, 1999, ARC's application matured to registration as U.S. Trademark Reg. No. 2,226,721.

16.    ARC actually uses the mark CO-SLEEPER in connection with a bassinet-alternative that facilitates co-sleeping. Accordingly, CO-SLEEPER is merely descriptive of the function of its CO-SLEEPER product, viz., to facilitate co-sleeping, and is therefore invalid and unenforceable as used. Further, ARC registration for CO-SLEEPER is not incontestable.

17.    ARC's CO-SLEEPER product competes with the BABY BUNK in the bassinette-alternative, co-sleeping devices market.

18.    On May 29, 2003, in an attempt to foreclose competition in the relevant market, ARC sent Baby Bunk a cease and desist letter, demanding that Baby Bunk "immediately cease all use of CO-SLEEPER/CO-SLEEP, delete same from [Baby Bunk's] website and all advertising and promotion material." ARC repeated these demands in subsequent communications with Baby Bunk's counsel.

19.    ARC also caused Baby Bunk's distributors to cease featuring Baby Bunk's products under the category "Co-Sleepers" and otherwise disrupted the contractual relationship Baby Bunk enjoyed with these distributors.

20.    As a result of ARC's actions in threatening legal action against Baby Bunk based upon an invalid mark and in interfering with Baby Bunk's relationships with its

distributors, Baby Bunk has suffered damage in the form of diminished traffic on Baby Bunk's website and decreased sales of Baby Bunk's products.

21.    If allowed to continue, ARC's improper threats of legal action and interference with Baby Bunk's relationships with its distributors are likely to cause Baby Bunk's sales and web traffic to diminish to such a level as to threaten the viability of Baby Bunk's business.

## COUNT I
### Declaratory Judgment

22.    The allegations set forth in paragraphs 1 through 21 of the Complaint are hereby incorporated by reference and made a part hereof.

23.    There exists an actual controversy between Baby Bunk and ARC concerning Baby Bunk's use of the term "CO-SLEEPER" and other "CO-SLEEP"-formative terms in directing traffic to its web-site and in marketing Baby Bunk's products.

24.    Pursuant to 28 U.S.C. §2201, Baby Bunk seeks a declaration that its use of the term "CO-SLEEPER" and other "CO-SLEEP"-formative terms does not infringe upon ARC's mark and does not violate 14 U.S.C. §1125 or any other applicable law.

## COUNT II
### Cancellation of U.S. Trademark Registration – 15 U.S.C. §1051

25.    The allegations set forth in paragraphs 1 through 24 of the Complaint are hereby incorporated by reference and made a part hereof.

26.    On February 23, 1999, ARC obtained a federal registration for the mark CO-SLEEPER with the United States Patent and Trademark Office, for use in connection

with furniture, jewelry boxes not of precious metals, picture frames, sleeping bags, mirrors (U.S. Reg. No. 2,226,721).

27.    Used in connection with furniture in the form of bassinets, cribs, co-sleepers, and other such goods and services, the mark CO-SLEEPER is primarily descriptive of such goods and services within the meaning of 15 U.S.C. §1052(e)(1).

28.    In addition, on information and belief, ARC does not utilize U.S. Reg. No. 2,226,721 in the manner asserted in the subject trademark application.

29.    In addition, on information and belief, U.S. Reg. No. 2,226,721 would not have issued had the United States Patent and Trademark Office been aware of the long-standing use of terms such as "co-sleep", "co-sleeping" and "co-sleepers" in medical publications to describe the practice of bed sharing between parents and infant children and the practice of parents sleeping in close proximity to infant children, generally.

30.    U.S. Reg. No. 2,226,721 should therefore be cancelled.

## COUNT III
### Tortious Interference with Advantageous/Contractual Relations

31.    The allegations set forth in paragraphs 1 through 30 of the Complaint are hereby incorporated by reference and made a part hereof.

32.    At the time of ARC's cease and desist letter, Baby Bunk had existing contracts with various distributors of its bassinet alternative product.

33.    At the time of ARC's cease and desist letter, ARC was aware of Baby Bunks contractual relationships with Baby Bunk's various distributors.

34.    ARC intentionally interfered with Baby Bunk's contractual relations with its distributors by, inter alia, demanding that the distributors remove Internet links referencing Baby Bunk's products from desirable areas of the distributor's web sites and

threatening to prohibit those same distributors from selling ARC's products if they did not comply.

35.    As reasons for ARC's demands to Baby Bunk's distributors, ARC threatened action based on its CO-SLEEPER registration – a descriptive and therefore, invalid and unenforceable mark. These actions were taken by improper means and/or motives.

36.    Baby Bunk's distributors acquiesced to the demands of ARC, causing damage to Baby Bunk in the form of diminished traffic on Baby Bunk's website and decreased sales of Baby Bunk's products.

### COUNT IV
### Unfair Competition and Deceptive Practices -- M.G.L. ch. 93A

37.    The allegations set forth in paragraphs 1 through 36 of the Complaint are hereby incorporated by reference and made a part hereof.

38.    Both Baby Bunk and ARC conduct trade and commerce within Massachusetts.

39.    ARC's conduct in demanding that its competitor Baby Bunk and its distributors cease and desist from using "CO-SLEEP"-formative terms in marketing Baby Bunks products and describing the medical benefits of same, which demand is based on an invalid registration for the descriptive mark CO-SLEEPER, constitute unfair and deceptive acts in the conduct of trade or commerce in violation of M.G.L..ch. 93A §§ 2(a) and 11.

40.    Baby Bunk has suffered damage in the form of disruption of its relationships with distributors, diminished traffic on Baby Bunk's website and decreased sales of Baby Bunk's products, including within the Commonwealth of Massachusetts.

7

WHEREFORE, plaintiff Baby Bunk, Inc., hereby requests that this Honorable Court:

1.  Enter Judgment in favor of the plaintiff and against the defendant on Counts I through IV of the Complaint;

2.  Enter a Declaratory Judgment declaring that Baby Bunk's use of CO-SLEEPER and other CO-SLEEP-formatives does not infringe upon ARC's mark and does not violate 15 U.S.C. §1125 or any other applicable law;

3.  Enter an order canceling ARC's registration of the mark CO-SLEEPER, U.S. Reg. No. 2,226,721.

4.  Award the plaintiff its damages, including multiple damages pursuant to M.G.L. c. 93A;

5.  Award the plaintiff its costs, interest, and attorneys' fees; and

6.  Award the plaintiff such other relief as the Court deems just.

### JURY DEMAND

Plaintiff, Baby Bunk, Inc, demands a trial by jury on all issues so triable.

Respectfully submitted,

BABY BUNK, INC.,
By its attorneys,

Robert R. Pierce (BBO#549172)
Thomas E. Kenney (BBO#561590)
Christopher D. Engebretson (BBO#635636)
Pierce & Mandell, P.C.
11 Beacon Street
Suite 800
Boston, MA 02108
(617) 720-2444

November 13, 2003